# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**JERALD J. VARHALLA,**

    **Plaintiff,**

    **v.**                              **Case No. 17-CV-1163**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

    **Defendant.**

---

## DECISION AND ORDER

---

Jerald J. Varhalla seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for supplemental security income benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons stated below, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

Varhalla protectively filed an application for supplemental security income benefits on August 22, 2013 alleging disability due to nerve damage in the left arm, chronic pain in the left arm, carpal tunnel syndrome in the wrist, and a degenerative left elbow. (Tr. 17, 77.) The claim was denied initially and upon reconsideration. (*Id.*) Varhalla filed a written request for a hearing. (*Id.*) A hearing was held before an Administrative Law Judge on April 7, 2016. (Tr. 33.) Varhalla, represented by counsel, appeared and testified at the hearing, as did Joseph Entwisle, a vocational expert.

In a written decision issued July 14, 2016, the ALJ found Varhalla had the severe impairments of neuritis, left wrist fracture, headaches, complex regional pain syndrome, depression,

and an anxiety disorder. (Tr. 19.) The ALJ further found that Varhalla did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (*Id.*) The ALJ found Varhalla had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: only occasional use of the left hand and arm; no climbing at elevated levels; no working around hazards or heights; occasional stooping, crawling, kneeling, balancing, and crouching; no above shoulder reaching activity with the left arm; and limited to simple, routine, repetitive, and non-complex jobs. (Tr. 21.) While the ALJ found Varhalla was not capable of performing his past relevant work, she concluded that based on Varhalla's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Varhalla could perform. (Tr. 25-26.) Thus, the ALJ found Varhalla was not disabled from August 22, 2013 (the application date) through the date of the decision (July 14, 2016). (Tr. 27.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review. (Tr. 1.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ

must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### *2. Application to this Case*

Varhalla alleges that the ALJ erred in three ways. First, he argues the ALJ erred in assessing his subjective complaints. Second, Varhalla argues the ALJ improperly weighed the opinion of his treating therapist, Angela Martin. And third, the ALJ erred in the weight given to State Agency psychological consultant, Dr. Esther Lefevre. Varhalla also asks that if his case is remanded, it be assigned to a different ALJ. I will address each argument in turn.

### 2.1 Assessment of Varhalla's Subjective Complaints

On May 28, 2009, Varhalla fell while at work. (Tr. 285.) He sustained a severe left elbow fracture (Tr. 260) and also shattered the humerus in his left arm and injured his left wrist (Tr. 355). Varhalla underwent a surgical repair of his humerus on June 8, 2009. (Tr. 263.) Throughout 2011, Varhalla treated with Dr. Steven Goldberg and participated in occupational therapy. (Tr. 276-77, 279, 288-89, 290-305, 308, 313, 329-32, 333-40, 351.) During this time period, the occupational

therapists consistently assessed Varhalla as capable of performing light work, as defined by the United States Dictionary of Occupational Titles. (Tr. 279, 284, 305, 308, 335.) Varhalla underwent minimal treatment in 2012 and 2013, but noted he was having problems with left arm pain and numbness, had a permanent ten pound lifting restriction, had left arm weakness with limited range of motion, had muscle wasting in the left arm, had difficulty writing and using a keyboard, and experienced insomnia because of his pain. (Tr. 355-59, 386-87.)

Varhalla began treating more frequently in 2014 for his left arm, elbow, and wrist pain, and was referred to a pain management clinic in April. (Tr. 429.) Varhalla treated with Dr. Cyril Philip for pain management multiple times in 2014, and received an ulnar nerve injection, which temporarily provided good pain relief. (Tr. 553-66.) During this time period, Varhalla began treating with Angela Martin, LPC for depression, anxiety, and panic attacks. (Tr. 509-518.)

Varhalla continued treatment with Dr. Philip and Angela Martin throughout 2015, and again underwent occupational therapy. (Tr. 456-58, 464-99, 503-08, 522-45, 566-73, 586-91.) During this time period, Varhalla continued to experience severe arm pain in the left upper extremity and attempted a spinal cord stimulator trial, which gave his a seventy percent reduction in pain. (Tr. 566, 570.) Because of the great benefit in pain reduction Varhalla experienced with the spinal cord stimulator trial, Varhalla considered having surgery to implant a stimulator device to control his left arm pain. (Tr. 522.) However, Varhalla was unable to go through with the surgery because his insurance company would not approve the implant. (Tr. 572.) Throughout 2015, Varhalla continued to exhibit a depressed and anxious mood, and he reported that when he was in a lot of pain, he was short with people and irritable. (Tr. 589.)

Varhalla continued his mental health and pain management treatment in 2016 and the records show Varhalla continued to experience depression, but experienced thirty percent improvement in pain with the use of a TENS unit. (Tr. 546-51, 573-85.) Dr. Philip noted that as of March, Varhalla's pain was "relatively controlled" with the TENS unit. (Tr. 576.)

Varhalla argues the ALJ erred in assessing his subjective complaints both as to his physical impairments and his mental impairments. The Commissioner's regulations set forth a two-step test for evaluating the credibility of a claimant's statements regarding his symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. Social Security Ruling ("SSR") 16-3p. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If the statements are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.*

As to Varhalla's physical impairments, his primary symptom is pain. As the ALJ notes and the record reflects, Varhalla was diagnosed with complex regional pain syndrome. (Tr. 22, 464.) Complex regional pain syndrome is defined as "diffuse persistent pain usually in an extremity often

associated with vasomotor disturbances, trophic changes, and limitation or immobility of joints;
frequently follows some local injury." Stedmans Medical Dictionary, Complex regional pain
syndrome type 1 (28th ed. 2005).

The record supports that Varhalla experienced persistent, chronic pain subsequent to his
work-related injury in 2009. During the relevant time period, Varhalla's pain ranged from "tolerable"
(Tr. 511) to "intractable daily, severe arm pain in the left upper extremity" (Tr. 566) that interfered
with his sleep, his appetite, and his ability to perform his activities of daily living (Tr. 559, 566, 571,
573, 589). One of Varhalla's treating providers, Dr. Przemyslaw Kolanko, agreed that Varhalla
should be referred to a pain management clinic due to his long history of arm weakness and pain
subsequent to his 2009 injury. (Tr. 428-29.) Varhalla pursued having a spinal cord stimulator
implanted into his body to alleviate his chronic pain, but ran into difficulty when his insurance would
not cover it. (Tr. 572.) Thus, the record supports that Varhalla was indeed experiencing intense,
chronic pain.

Although the ALJ states that she considered Varhalla's subjective complaints when crafting
the RFC (Tr. 23), it is entirely unclear from the decision how the subjective complaints were
considered. The ALJ's analysis focuses solely on the fact that she found the objective medical
evidence out of proportion with Varhalla's claimed limitations. (*Id.*) While an ALJ "may discount
subjective complaints of pain that are inconsistent with the evidence as a whole . . . the ALJ may not
disregard subjective complaints merely because they are not fully supported by objective medical
evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995). The lack of objective medical evidence
is merely one factor to consider, along with the other factors listed in SSR 16-3p. *Id.* The ALJ failed
to consider these other factors beyond the objective evidence, such as his use of pain medication, his

treatment beyond medication (i.e., the implant), and his functional limitations (i.e., difficulties with activities of daily living, sleep, eating, etc). Because the ALJ failed to build a logical bridge between Varhalla's subjective complaints and her finding that they are not entirely consistent with the evidence of record, this issue must be reconsidered on remand.

The same error occurs with the ALJ's consideration of Varhalla's mental impairments. The ALJ again finds that the objective medical evidence does not support his assertions; however, the ALJ states, without further elaboration, that she considered Varhalla's subjective complaints. (Tr. 24.) Again, it is unclear what subjective complaints she considered and the extent to which she credited or discredited them. Further, the ALJ's citation to the evidence is incomplete. While the ALJ states that Varhalla's treatment was "conservative," this description is unclear. Varhalla does not allege he experienced episodes of decompensation requiring hospitalization. He suffers from anxiety and depression and treated those conditions with regular therapy sessions and medication. (Tr. 53-56.) Further, Varhalla's mental health records consistently describe his affect as "noticeably despondent" (Tr. 582, 585, 587, 589) and his mood as "depressed" (Tr. 445, 509, 511, 514, 517, 520, 523, 529, 532, 538, 547, 550). While the ALJ cites to a single record where Varhalla acknowledged he was feeling better, the ALJ cannot ignore this contrary evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). For these reasons, I find the ALJ erred and must reconsider Varhalla's subjective complaints, both physical and mental, on remand.

### 2.2 Weight Given to Angela Martin, LPC

Varhalla argues the ALJ improperly weighed the opinion of his treating licensed professional counselor, Angela Martin. An ALJ must consider all medical opinions in the record, but the method of evaluation varies depending on the source. The regulations distinguish "acceptable medical

sources" from "other sources." SSR 06-3p. Only "acceptable medical sources" can give a medical opinion and only "acceptable medical sources" can be considered treating sources, whose medical opinions may be entitled to controlling weight. *Id.*

At the time of the ALJ's decision, SSR 06-3p was in effect. Under SSR 06-3p, licensed professional counselors are not considered "acceptable medical sources." Although an "other source" is not entitled to controlling weight, the ALJ must still consider the evidence from these "other sources." *Id.* In weighing the evidence from "other sources," the ALJ should consider: how long the source has known the individual and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion. *Id.*

Varhalla treated with Martin fifteen times between June 2014 and February 2016. On April 5, 2016, Martin completed a Mental Source Statement in which she opined that because of depression and anxiety, Varhalla was moderately limited in his ability to understand and remember simple instructions; carry out simple instructions; and maintain attention and concentration for simple, routine, repetitive tasks. (Tr. 591.) She opined he was extremely limited in his ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions. (*Id.*) Martin further opined Varhalla had marked limitations in his ability to respond to usual work situations and changes in routine work setting. (Tr. 592.) She opined Varhalla would be absent from work more than four days a month because of his impairments, would need unscheduled breaks, and would be off-task more than thirty percent of an eight hour workday. (*Id.*)

Finally, Martin opined Varhalla had moderate limitations in maintaining social functioning and marked difficulties in maintaining concentration, persistence, or pace. (*Id.*)

The ALJ assigned little weight to Martin's opinion, finding the record did not support the degree of limitation Martin opined to, pointing to the fact Varhalla did not require emergency treatment due to his mental health symptoms, the fact that Varhalla stated he was feeling better in one record, and because Martin is not an acceptable medical source. (Tr. 24.)

While the ALJ is entitled to give less weight to the opinion of an "other source" because "'acceptable medical sources' are the most qualified health care professionals," SSR 06-3p, the ALJ must still evaluate the "other sources" based on the factors articulated above. Again, the ALJ rejects Martin's opinion based on a single record where Varhalla told Felicia Lospaluto, another treating mental health care provider, that he was feeling less depressed. (Tr. 578.) The ALJ ignores, however, the multitude of Martin's records describing Varhalla's mood as depressed. (Tr. 445, 509, 511, 514, 517, 520, 523, 529, 532, 538, 547, 550.) Also, the ALJ does not consider the records from Lospaluto and Latesha Parish indicating that Varhalla's affect was noticeably despondent. (Tr. 582, 585, 587, 589.) Further, Martin specifically opined that Varhalla did not experience any episodes of decompensation (Tr. 592), which are often accompanied by emergency treatment such as hospitalization (Tr. 593). Martin observed Varhalla acting lethargic (Tr. 511), depressed, wincing in pain while reaching for things (Tr. 519, 522, 528, 535, 537), and expressing suicidal ideation (Tr. 509). It is unclear from the ALJ's decision how Martin's opinion is unsupported by the record. For these reasons, the ALJ must reconsider Martin's opinion on remand.

2.3    Weight Given to State Agency Psychological Consultant, Dr. Esther Lefevre

Varhalla argues the ALJ erred in assigning great weight to the opinion of Dr. Lefevre. On May 2, 2014, Dr. Lefevre opined that Varhalla had depression and would generally be able to focus sufficiently to complete tasks of two to three steps and would having increasing difficulty with more complex tasks. (Tr. 90.) In assigning great weight to this opinion, the ALJ found it was consistent with the record as a whole (focusing on Varhalla's ability to prepare his own meals, do light laundry, use public transportation, work part-time, and manage his finances). (Tr. 24-25.) Varhalla argues that he did not begin regular mental health treatment until June 2014; thus, Dr. Lefevre did not have the benefit of reviewing the majority of his mental health records when issuing her opinion. Varhalla's argument is well taken. Prior to the date of Dr. Lefevre opinion, on April 28, 2014, Varhalla attended an initial psychotherapy session with Dominique Pritchett, who observed that Varhalla's mood was depressed, that he appeared to be in physical pain while using his left arm—even to sign paperwork, and noted that treating his depression would be difficult without receiving relief from his physical pain. (Tr. 444-45.) Because Dr. Lefevre is a non-examining source, the fact that her opinion does not have the benefit of almost two years of mental health treatment records makes its value suspect. Further, it is unclear how the opinion is "consistent with the record as a whole" based solely on a recitation of a few activities of daily living. For these reasons, the ALJ must re-evaluate Dr. Lefevre's opinion on remand.

2.4    Different ALJ on Remand

Varhalla asks that his case be remanded back to a different ALJ for rehearing. In *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996), the court of appeals found that absent sufficient evidence of bias, it had "no general power . . . to order that a case decided by an administrative agency be sent

back . . . to a different administrative law judge." However, if the "tone of the administrative law judge's opinion suggests that she may have an unshakable commitment to the denial of [the] applicant's claim," then the court can "recommend" that the case be transferred to a different ALJ. *Id.* While I agree that the ALJ's decision contains multiple errors, I do not find that the record shows the ALJ has an "unshakable commitment" to denying Varhalla's claim. Thus, I will not recommend that this case be transferred to a different ALJ on remand.

## CONCLUSION

Varhalla alleges the ALJ erred in assessing his subjective complaints, in weighing the opinion of his treating therapist, and in weighing the opinion of the State Agency psychological consultant. I agree the ALJ erred and must reconsider these issues on remand.

Although Varhalla requests that this Court award him benefits in lieu of remanding the case, an award of benefits is appropriate only "if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). Here, there are unresolved issues and this is not a case where the "record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Therefore, the case is appropriate for remand pursuant to 42 U.S.C. § 405(g), sentence four.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of September, 2018.

BY THE COURT:
*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge